## SHUBRICK v. ADAMS.

1. The stay-laws of 1861–1865, did not create a legal disability to sue. *State v. Carew*, 13 *Rich.* 506.
2. Where a disability intervenes after a right of action has accrued, the currency of the statute of limitations is not arrested, and the same principle applies to a presumption of payment arising from the lapse of time.
3. The suspension of the statute of limitations by act of the legislature does not affect the presumption of payment arising from the lapse of time.
4. When a presumption of payment commenced to run in February, 1861, it became complete in twenty-years, notwithstanding the stay-laws of 1861–1865, and the suspension thereby of the statute of limitations.
5. The death of one of the obligors on a joint and several bond severed the obligation, and payments thereafter made on the bond by the survivor did not prevent the presumption of payment from running in favor of the deceased's estate.

Before PRESSLEY, J., Charleston, November, 1882.

This was an action by E. T. Shubrick, trustee, against L. G. Adams, administratrix of W. C. Gatewood. The opinion states the case.

*Messrs. Rutledge & Young*, for appellant.

*Mr. S. Hyde, Jr.*, contra.

September 26th, 1883. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. This was an action brought against the respondent as administratrix of W. C. Gatewood, deceased, on a joint and several bond executed by Dr. Geddings, with Gatewood as surety. Gatewood died in February, 1861. Dr. Geddings made several payments on the bond after the death of Gatewood—the last on April 9th, 1877. Dr. Geddings died in 1878, leaving a balance on the bond unpaid. This action was commenced against the estate of Gatewood on August 21st, 1882, to recover this balance. The defendant pleaded payment, relying on the presumption arising from the lapse of time, more

than twenty-one years having intervened between the death of Gatewood and the commencement of the action.

Judge Pressley, who heard the case, sustained this plea, holding that the death of Gatewood severed the obligation, and more than twenty years having elapsed since the death of Gatewood, and before the commencement of this action, that the estate of Gatewood was entitled to the presumption of payment, notwithstanding the stay-law. He therefore ordered and adjudged that judgment be for the defendant with costs. The case now comes before this court on appeal; the main question involved being whether the presiding judge erred in declining to deduct the time which elapsed during the existence of what is known as the stay-laws.

The presumption of payment arising from the lapse of twenty years, as a general principle of law, is not contested by the appellant; but it is denied that the principle applies in this case, for the reason, as it is alleged, that twenty years in the sense of that principle has not elapsed here, because, as contended by the appellant, the four years of the stay-laws should be deducted, which, if done, it is conceded that less than twenty years will be left; and such being the case, the facts would not then warrant the application of the presumption. So, as we have already said, the principal question in the case is, should the four years of the stay-laws have been eliminated.

This is the first time that this question has been distinctly made in this State as applicable to the presumption of payment of a sealed note arising from the lapse of time. The question is important, and requires mature consideration. In the recent case of *Boyce* v. *Lake,* 17 *S. C.* 481, where the Circuit judge had held that the presumption of payment arising from the lapse of time was rebuttable—dependent upon the weight of the testimony as to the fact of payment, and that lunacy, the insolvency or solvency of the defendant, and the stay-law were facts that might be considered as bearing upon that question, which he ruled should be decided by the preponderance of the evidence—this court reversed the judgment because of error, as we held, in the ruling of the Circuit judge, that the presumption could be

rebutted by the preponderance of testimony as to the actual fact of payment.

In our opinion, founded upon authority, (see the cases referred to in *Boyce* v. *Lake*,) we regarded the presumption as having acquired an artificial force much stronger than a mere possibility, subject to be overthrown by a simple preponderance of testimony to the contrary, and that the question in such case was not one of payment to be decided by the weight of the testimony directed to that point with the *onus* on the plaintiff, but that on account of the artificial force which the lapse of time had given to the presumption, this was conclusive unless overthrown by testimony of the character required to resist a debt barred by the statute of limitations. This was the pith of the opinion in *Boyce* v. *Lake*, following Judge Wardlaw, Chancellor Harper and Dunkin, and Lord Ellenborough in the cases cited therein. There was no distinct motion made in *Boyce* v. *Lake* to deduct the four years of the stay-law, nor was the point squarely made or decided, although it was incidentally involved in the case. Such being the fact, we feel at liberty to consider this question independent of that case now for the first time distinctly presented.

The argument of the appellant is that the stay-law created a legal disability which prevented the assertion of his rights; and that, under the law, the currency of the presumption of payment was arrested during the continuance of such disability. The first question to be considered, in connection with this argument, is the proposition that the stay-law created a legal disability. Is this proposition a sound one? if not, and upon examination it should fall, of course, the remainder, which is a conclusion drawn from it, would go with it. Upon this point it is needless to do more than to refer to the case of the *State* v. *Carew*, 13 *Rich.* 506. The legislature, on December 21st, 1861, passed an act entitled " An act to extend relief to debtors, and to prevent the sacrifice of property at public sales." By the first section it is provided " that it should be unlawful for any officer of this State to serve or execute any mesne or final process of any courts of the State for the collection of money until after the expiration of the first session of the next general assembly of this State," &c. This act was renewed in December, 1863, again in December, 1864;

and in December, 1865, it was continued of force until the adjournment of the next regular session. At the May Term of the Appeal Court, 1866, these acts, in so far as they interdicted the service of process, mesne or final, were declared unconstitutional by the Court of Errors, in the case above referred to, in a most elaborate and able opinion delivered by Dunkin, C. J.

In the face of this opinion it cannot be consistently contended that creditors were laboring under any legal disability in the enforcement of their claims by virtue of these acts. It is true for four years they stood unimpeached, and were acquiesced in; but this did not give them the sanction of law, and it is the legal aspect of the interdiction which is now under consideration. Did these acts create a legal disability which prevented the plaintiff from asserting his right? That is the question. There can be no other answer but a negative one. Upon the very first assault, and before they had been sanctioned by time or construed by inferior courts, they fell by an almost unanimous opinion of the highest court in the State, the Court of Errors. In such a case there is is no room for the doctrine of *communis error*. Nor is there any ground upon which it can be claimed that a legal disability existed.

But even admitting that such disability existed, would that help the appellant under the facts of this case? The following legal propositions have been established in reference to the statute of limitations in numerous decisions, and they may be regarded as firmly settled. 1. That where a party is under a legal disability at the time his right of action accrues, the statute is not put in operation until the disability ceases. For instance, in the cases of infancy, coverture, or where the defendant is absent from the State. *Riddlehoover* v. *Kinard*, 1 *Hill Ch.* 376; *Gray* v. *Givens*, 2 *Hill Ch.* 514. 2. Where the disability intervenes after the right of action accrues, and, consequently, after the currency of the statute has commenced, as a general rule, it is powerless to stop the statute.

These principles are as firmly established and as well settled, perhaps, as any connected with our jurisprudence. See the cases of *Fewell* v. *Collins*, 3 *Brev.* *286; *Adamson* v. *Smith*, 2 *Mill. Con. R.* 269; *Fayson* v. *Prather*, 1 *N. & M.* 296, where Judge

Cheves collects and discusses many authorities. *Richardson* v. *Whitfield*, 1 *McCord* 403. In consequence of this latter principle, whenever it has been deemed proper that the statute of limitations should not operate after its currency has once commenced, an act of the legislature became necessary to arrest it. Hence, in the stay-laws, the statute was suspended by a special provision. This provision of these acts has been declared constitutional. *Barry* v. *Iseman*, 14 *Rich*. 129. And it has been enforced in the case of *Wardlaw* v. *Buzzard*, 15 *Rich*. 162, where the plaintiff was given the benefit of the suspension.

Now, the important question arises, do these principles apply to the presumption of payment growing out of the lapse of time? Judge Wardlaw, in the case of *Wadsworthville Poor School* v. *McCully*, 11 *Rich*. 430, said: "The period of twenty years was originally adopted in analogy to the English statute of limitations." Judge Cheves, in the case of *Adamson* v. *Smith*, 2 *Mill. Con. R*. 272, makes the same suggestion in reference to the statutes. He says: "They are statutes of peace and repose, necessary to the comfort of society. They are found in some shape or other in every country, and under every government. Their adoption is scarcely a matter of choice. If the positive enactments of the legislature do not put a limit to the time within which claims should be made, that limit results from the rules of evidence; and the law presumes that the claim which has been for a great length of time forborne, does not exist. Time, with its long train of inevitable and incidental auxiliaries, destroys the muniments of rights, and the evidences of acquittances, and these statutes and legal presumptions which perpetuate their effect, are indispensable." He concludes, that the balance is infinitely in their favor, and that they should be upheld and sustained, notwithstanding the fact that in special cases injury may be done.

The two, then, originally adopted for the same reasons and standing upon the same grounds, that of repose and peace, should be governed and enforced upon the same general principles, and decisions which have been made in reference to the one should apply with more or less force to the other. Governed by this rule then, and applying the cases above cited in which the statute

was involved, to the presumption arising from the lapse of time, it would follow that where the disability existed before the right of action accrued, the currency of the presumption would not begin, but where it intervened afterwards, the presumption would not be arrested unless by special act the presumption had been suspended. It requires a special act to suspend the statute, and why not the presumption.

Now the facts in this case are, that even supposing the stay-laws to have created a legal disability, yet this was a disability after the presumption of payment had commenced. The last payment on the note during the life of the intestate, Gatewood, was in February, 1860. This was made by Dr. Geddings. Gatewood died in February, 1861. This payment of Geddings no doubt continued the liability of Gatewood from its date, and the presumption of payment by lapse of time began then. The first stay-law was enacted on December 21st, 1861, nearly two years after the right of action accrued, and after the currency of the presumption began.

Here, then, the disability, if it be a disability, intervened. Can we, upon authority, or from the analogy of decided cases in reference to the statute, say that the presumption was arrested? This is, at least, doubtful. If this was a case under the statute, we might so conclude; but it would not be by the authority of the decided cases, but upon the ground that the acts creating the stay of mesne and final process, *supra*, also contained a provision suspending, in such cases, the limitation to bringing action in express words. This provision of these acts would be relied on and enforced, not from common law principles demanding it, but because it was so enacted. The legislature, however, did not see proper to suspend the presumption of payment in such cases, but simply suspended the statute of limitations; and we can find no sufficient authority for this court to go beyond the act. We would feel bound, if the statute was alone involved, to declare it suspended whether the stay-laws were constitutional or not, because the suspension of the statute has been declared constitutional, and it would be our duty to follow this decision. This was done in *Wardlaw* v. *Buzzard, supra.* But where the presumption of payment is alone involved, and in the absence of

any enactment suspending that presumption in a given case, what other guide have we but the weight of the decisions holding that no intervening disability can avail.

The *Wadsworthville Poor School* v. *McCully* was very similar in some of its features to this case. Mr. Wadsworth had devised his lands to certain persons in trust for the establishment and maintenance of a poor school. The legislature, recognizing and appreciating the benevolence of Mr. Wadsworth, and to secure the lands to the purposes intended, by special act suspended the statute of limitations as to all the lands thus devised. In after years, the trustees sued to recover from McCully a portion of the lands then in his possession. McCully relied on the presumption of title arising from twenty years' possession. The plaintiff urged that the statute of limitations had been perpetually suspended, and that this should apply to the presumption of title founded on long possession, as well as to the technical statute of limitations. The court held that the act suspending the statute as to these lands did not affect the presumption of a conveyance from the owner arising from twenty years' possession.

How does this case differ from the one at bar in principle? Here, as in that case, the statute of limitations was suspended; and this suspension would have protected the plaintiff in either case had the statute been the defense interposed by defendant; but the defense has not, in either case, relied on the statute. They have relied upon a different defense altogether, and one not affected by the suspension, to wit, lapse of time. Judge Wardlaw, in delivering the opinion of the court in the *Wadsworthville Poor School* case, said : " The period of twenty years was originally adopted in analogy to the English statute of limitations ; but it has no connection with our statute. It would be a great stretch of special indulgence, given by the suspending act, to say that thereby the plaintiff was not only shielded against the effect of ten years' possession, but was indemnified against all the effect of time and acquiescence." He further said, " But we cannot perceive the influence which the suspending act of 1805 has upon the presumption." Neither can we perceive the influence which

the suspending provisions of the stay-laws has upon the presump- tion in this case.

It is urged by appellant, in reply to this, that while the statute was suspended in favor of Wadsworth, yet that he was under no disability to sue; that he might have brought his action notwith- standing the suspension; that instead of doing this he submitted to the invasion of his rights, and, therefore, had no cause to complain. So, too, did the plaintiff in the case at bar. The case of *State* v. *Carew, supra,* holds that the stay-laws never had any binding force; they were nullities from the beginning. They were not in the way of the plaintiff to bring her action. No doubt she thought otherwise, but she was mistaken. True, it was a reasonable mistake, and one which, under the circum- stances, was entitled to all respect, and it would be gratifying to the court to relieve her if it could be done consistently with the rules of law, but we do not see how this can be done.

We have examined the cases relied on by the appellant, to wit, *Brewton* v. *Cannon,* 1 *Bay* 475; *Higginson* v. *Air,* 1 *Desaus.* 427, and *Dunlop & Co.* v. *Ball,* 2 *Cr.* 180. The first case, reported in Bay, was heard in 1795. But few of the facts are given; and the opinion of the court is embraced in less than a dozen lines. It simply stated that while twenty years presumed payment of a bond, yet that the war and the variety of dis- tresses occasioned by a revolution alter the situation of a country greatly; and, therefore, all these circumstances should have been permitted to have gone to the jury to judge whether the presump- tion was so strong as to warrant them to find for the plaintiffs, overruling Judge Bay, who tried the case, and who held that it was a rule of law that twenty years would presume payment of a bond, and in directing the jury to so find as matter of law. The point of the case must have been this error of law in the ruling of Judge Bay.

In *Higginson* v. *Air,* one of the points made was that the deceased partner was bound by the payments and admissions of the surviving partner. In *Dunlop & Co.* v. *Ball,* the plaintiff was an alien enemy, and the court held that no presumption could arise during a state of war as between these parties. These cases, then, are not in point. They fail to touch the precise

question here.  Even admitting them to be authority to the extent claimed by appellant, to wit, that a legal disability, whether it exists before action brought or intervenes afterwards, should be deducted; yet the appellant could claim no relief thereby, because, as we have seen, there was no legal disability in this case.  The foundation rock upon which the structure is attempted to be built is absent.  *State* v. *Carew, supra.*

The ruling of Judge Pressley, that the death of Gatewood severed the obligation, and that, therefore, subsequent payments by Dr. Geddings did not bind the estate of Gatewood, is sustained by the cases of *Smith* v. *Caldwell*, 15 *Rich.* 374, and *Smith* v. *Townsend*, 9 *Rich.* 44.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.